EBERLE L. WILSON, Plaintiff in Error, *vs.* THE BOARD OF EDUCATION OF CHICAGO, Defendant in Error.

*Opinion filed April 23, 1908.*

1. SCHOOLS—*the courts will not interfere with reasonable rules adopted by board of education.* A board of education has power to adopt such rules and by-laws for the discipline and control of the school as it deems proper, and courts will not interfere unless there is a clear abuse of the power and discretion vested in the board.

2. SAME—*when anti-fraternity rule is not unreasonable.* A rule adopted by board of education condemning Greek letter societies in the high school, requiring teachers to refuse to give public recognition to such societies, allow meetings to be held in the school building, permit the name of the school to be used by such societies, or allow members thereof to represent the school in any literary or athletic contest or in any public capacity, is not unreasonable nor an unlawful discrimination.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

This is a writ of error sued out of this court to review a judgment of the Appellate Court affirming the decree of the superior court of Cook county sustaining a demurrer to the bill and dismissing it for want of equity. The bill was filed by four minors, by their next friends, to enjoin defendant in error, the Board of Education of the City of Chicago, from enforcing a certain rule adopted by said board and to have said rule declared null and void. The rule reads as follows:

"The committee on school management reports that it is in receipt of the following report from the superintendent of schools and recommends concurrence therein: 'The superintendent of schools respectfully reports that in accordance with the action of the board of education, taken at its last meeting, he has considered the matter of secret societies in the high schools, and respectfully recommends that the principals and teachers of the high schools be instructed to deny any secret societies which may now exist in their schools all public recognition, including the privilege of meeting in the school buildings; that such organizations be forbidden to use the school name; that no student who is known to be a member of a fraternity or sorority, or other so-called secret society, be permitted to represent the school in any literary or athletic contest or in any other public capacity; that the attention of parents of the pupils who are to attend the public high schools be called to the fact that the board of education, the superintendent and teachers of the high schools unanimously condemn all such secret societies.' "

The bill alleges that complainants are all under twenty-one years of age and are attending the Hyde Park high

school, one of the public schools of the city of Chicago, and are pursuing the course of study prescribed by the rules of the board of education and obeying all lawful rules of said board and of the teachers employed by it; that complainants are members of an organization known as Phi Sigma fraternity, an organization not connected with but distinct from said Hyde Park high school; that the meetings of said organization are held after school hours; that said fraternity is a large association, having various branches and chapters located in various States; that the chapter in Hyde Park was organized in 1897; that the aim of the society is to stimulate loyalty and fidelity to the teachers and schools and a desire for a high scholarship and commendable individual action; that said society is not opposed or in any manner detrimental to the welfare of the school; that complainants and other pupils belonging to it live with and are under the control of their parents and have their consent to be members of said association. The bill further alleges that there are twelve hundred pupils in attendance at the Hyde Park high school, and that there are a number of associations of the pupils of said school, such as literary, musical, athletic and class organizations, and that many of the members of said organizations are members also of various fraternities. The bill further alleges that the board of education had recently sent out notice that the rule would be rigidly enforced, and that the complainants have, by reason thereof, been prevented, under threat of expulsion, from taking part in any literary or athletic contest held under the auspices of said school, and have been deprived of positions in said associations to which they had been elected by other pupils, and are denied the right to resume the said positions because of their membership in such fraternities; that participation in the exercises of the societies and associations of the said school is beneficial to pupils and is freely granted to all except complainants and others who are members of secret societies. The

bill charges that the adoption of said rule was the exercise of an arbitrary power by the board of education, violative of the natural rights of complainants and an unlawful discrimination against them, and is therefore null and void. The prayer is that the rule be declared void and that the board of education be enjoined from enforcing or attempting to enforce it. The superior court sustained a demurrer to the bill and dismissed it for want of equity. Plaintiff in error, one of the complainants, prosecuted an appeal from that decree to the Appellate Court for the First District. That court affirmed the decree of the superior court, and the case is brought to this court for review upon a writ of error to the Appellate Court.

JOHN C. WILSON, for plaintiff in error:

The board of education of the city of Chicago derives its powers from the General Assembly, and may exercise such powers, only, as are expressly granted or such as are necessarily implied. *Rulison* v. *Post,* 79 Ill. 567.

What is a reasonable rule is a question of law for the court. *Thompson* v. *Beaver,* 63 Ill. 353; Mechem on Public Officers, sec. 720.

The schools are public institutions, and must be so managed that all children, without discrimination, shall have equal rights to participate in the benefits intended to be derived. *Chase* v. *Stephenson,* 71 Ill. 383; *People* v. *Board of Education,* 101 id. 315.

A rule which is not reasonable and which tends to defeat the object of the School law will not be sustained. *Potts* v. *Breen,* 167 Ill. 67; *Trustees of Schools* v. *People,* 87 id. 303; *Lawbaugh* v. *Board of Education,* 177 id. 572.

Ordinances or municipal regulations investing a board of officials with a discretion which is purely arbitrary and which may be exercised in the interest of a favored few are void. *Lumber Co.* v. *Town of Cicero,* 176 Ill. 27.

If there be a reasonable doubt concerning the existence of a power the doubt must be resolved against the board. *Emmons* v. *Beardstown,* 132 Ill. 380; *Trust Co.* v. *Railroad Co.* 157 id. 641.

Discriminating legislation, in whatever form, whether against persons because of class, sect, creed, religious, social or political affiliations, is prohibited. *Ho Ah Kaw* v. *Nunan,* 5 Sawyer, 552.

The resolution in question attempts to delegate powers to the principals and teachers, to be exercised in their discretion. *Lindblad* v. *Board of Education,* 221 Ill. 261.

The rule in question is unreasonable and void because (*a*) it is a discrimination against certain pupils; (*b*) it seeks to impose penalties and to create disabilities; (*c*) it invades and impairs natural rights; (*d*) being directed against secret societies it is uncertain; (*e*) it is *ex post facto* in its nature; (*f*) it attempts to deprive parents of the right to control the conduct of their children.

Excluding complainants from sharing in privileges enjoyed by others punishes for past conduct. *Cummings* v. *Missouri,* 4 Wall. 277; *Ex parte Garland,* id. 333.

FRANK HAMLIN, and ANGUS ROY SHANNON, for defendant in error:

The rule in question does not violate a natural nor a legal right of any person. *People* v. *Wheaton College,* 40 Ill. 186; Const. of 1870, art. 8, sec. 1; *Trustees of Schools* v. *People,* 87 Ill. 303; *State* v. *White,* 82 Ind. 278; *Wayland* v. *School Directors,* 86 Pac. Rep. 642.

The law presumes the rule in question to be reasonable. The rule is, in fact, reasonable, and is the exercise of a discretionary power of discipline. School law, art. 6, sec. 22, clauses 7, 8, and sec. 23, clauses 1, 4, 9; *Hawes* v. *Chicago,* 158 Ill. 653; *People* v. *Cregier,* 138 id. 401; *Launder* v. *Chicago,* 111 id. 291; *People* v. *Wheaton College,* 40 id. 186; *State* v. *White,* 82 Ind. 278; *Kinzer* v. *Toms,* 105

N. W. Rep. 686; *Wayland* v. *School Trustees*, 86 Pac. Rep. 642; *Jones* v. *Cody*, 132 Mich. 13; *Lauder* v. *Seaver*, 32 Vt. 114; *Sherman* v. *Charleston*, 8 Cush. 160; *Deskins* v. *Gose*, 85 Mo. 485; *Hutton* v. *State*, 23 Tex. App. 386; *Burdick* v. *Babcock*, 31 Iowa, 562; *Smith* v. *Know*, 42 id. 522; *Cleary* v. *State*, 1 Q. B. 465; Mechem on Public Officers, sec. 730.

The board of education, in making the rule, acted judicially, and courts have no right to substitute their judgment for that of the board in such matters, the board being given discretionary power by law over school discipline and management. *School Directors* v. *School Trustees*, 190 Ill. 390; *McCormick* v. *Burt*, 95 id. 263; *School Directors* v. *School Trustees*, 66 id. 247; *Thompson* v. *Beaver*, 63 id. 353; *Metz* v. *Anderson*, 23 id. 410; *King* v. *Jefferson City Board*, 71 Mo. 628.

Mr. JUSTICE FARMER delivered the opinion of the court:

The constitution of this State provides that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." (Sec. 1, art. 8.) By act of the General Assembly the public schools of the city of Chicago are under the control of the board of education, and it is given all power and authority required for the proper management of the schools, with power to enact such ordinances as may be deemed necessary and expedient for such purpose; also power to expel pupils who are guilty of gross disobedience or misconduct. It is made the duty of the board of education "to establish all such by-laws, rules and regulations for the government and for the establishment and maintenance of a proper and uniform system of discipline in the several schools as may, in their opinion, be necessary."

Counsel for plaintiff in error does not question the power of the board of education to prescribe all reasonable rules

necessary for the conduct and management of the public schools, but insists that the rule here involved was not a reasonable rule; that it was in violation of the natural rights of plaintiff in error and an unlawful discrimination against him; and that this is a question of law to be determined by the courts. It is not claimed nor averred in the bill that plaintiff in error was deprived, by the rule in question, from attendance at the school nor from taking his place in the classes to which he belonged and pursuing his studies and receiving instruction, the same as all other pupils in the school, in the course of studies taught therein. It appears from the averments of the bill that there were associations permitted to be organized among the pupils of said Hyde Park high school, principally for literary, musical and athletic exercises and contests; but these were not a part of the course of study required to be pursued by pupils attending said school, and were not within the contemplation of the constitution nor of the act of the legislature in providing a system whereby all the children of the State may receive a good common school education. The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules and by-laws necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts unless there is a clear abuse of the power and discretion conferred. Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order and discipline of the schools and the rules required to produce these conditions. It was the judgment of the superintendent of schools of the city of Chicago, as well as of the board of education, that membership in secret societies, known as Greek letter fraternities or sororities, was detrimental to the best interests of the schools. Whether this judgment was

sound and well founded is not subject to review by the courts. The only question for determination is whether the rule adopted to prevent or remedy the supposed evil was a reasonable exercise of the power and discretion of the board. The rule required teachers to refuse to give public recognition to such secret societies, to refuse to allow their meetings to be held in the school buildings or to allow the name of any school to be used by the organizations. The rule also required teachers to refuse to allow a member of a fraternity or sorority to represent his school in any literary or athletic contest or in any other public capacity; that parents of the pupils be informed that the board of education, the superintendent and teachers in the high schools unanimously condemned all such secret societies. The rule denied to pupils who were members of secret societies no privilege allowed to pupils not members, except the privilege of representing the schools in literary or athletic contests or in any other public capacity. They were not denied membership in associations of pupils of the schools for literary, social, musical or athletic exercises, and were not prohibited from receiving the same benefits from those organizations that pupils not members of secret societies received. They were only prohibited from representing the schools, as members of those associations, in public contests and capacities. This was not a denial of any natural right and neither was it an unlawful discrimination.

*People* v. *Wheaton College*, 40 Ill. 186, was a *mandamus* proceeding against the college to compel the re-instatement of a student who had joined the Good Templars in violation of the college rules, and had for that reason been suspended from the privileges of the college until he expressed a purpose to conform to its rules. The court said: "Wheaton college is an incorporated institution, resting upon private endowments and deriving no aid whatever from the State or from taxation. Its charter gives to the trustees and faculty the power 'to adopt and enforce such rules as may be

deemed expedient for the government of the institution,'—
a power which they would have possessed without such ex-
press grant, because incident to the very object of their in-
corporation and indispensable to the successful management
of the college. Among the rules they have deemed it ex-
pedient to adopt, is one forbidding the students to become
members of secret societies. We perceive nothing unreason-
able in the rule itself, since all persons familiar with college
life know that the tendency of secret societies is to withdraw
students from the control of the faculty and impair to some
extent the discipline of the institution. Such may not al-
ways be their effect, but such is their general tendency. But
whether the rule be judicious or not, it violates neither good
morals nor the law of the land, and is therefore clearly with-
in the power of the college authorities to make and enforce."

*Kinzer* v. *Toms,* 3 L. R. A. (N. S.) 496, was a *man-
damus* proceeding to compel the board of directors of Ma-
rion school district, Iowa, to re-instate in the high school a
pupil who had been suspended therefrom by the board of
directors until he should apologize to the superintendent,
before the school, for his willful violation of a rule adopted
by the board. The rule prohibited playing foot-ball under
the auspices of the high school or on the school grounds.
The pupil who was suspended, acting with others, caused a
poster to be printed advertising a game of foot-ball to be
played by the west branch of the high school and the high
school on a Saturday, for which an admission fee of twenty-
five cents was charged. The authority of the board to adopt
the rule was challenged by the petitioner, and it was also
contended by him that his conduct was not a violation of
the rule. Both these contentions were decided in favor of
the board of directors. The court said: "It was plainly
intended, therefore, that the management of school affairs
should be left to the discretion of the board of directors and
not to the courts, and we ought not to interfere with the
exercise of discretion on the part of a school board as to

what is a reasonable and necessary rule, except in a plain case of exceeding the power conferred."

In *Wayland* v. *Board of School Directors*, 86 Pac. Rep. 642, the validity of a rule substantially the same as the one here in question was passed upon by the Supreme Court of the State of Washington. The board of education of Seattle, after an investigation of the probable effect of Greek letter societies or fraternities upon pupils in the schools, in 1901 adopted a rule prohibiting pupils from becoming members of such societies. George Wayland, while a pupil in the public school, in violation of the rule became a member of a fraternity, as did also other pupils. In May, 1905, the board of education amended its former rule so as to provide that all pupils who were then members of any high school secret society, or pledged to become such, who would promise that so long as they remained pupils of said high school they would not become members of any other secret society or give any promise or pledge to become such, or solicit any other pupil to give any promise or pledge to become a member of any high school fraternity or secret society, and in good faith kept such promise, would be restored to the privileges of such school, but that all students who thereafter should become members of or in any way pledge or bind themselves to join any high school fraternity or secret society, or should initiate or pledge any other student, or in any way encourage or foster the fraternity spirit in the high school, should be denied all the privileges of the high school except those of the school room. Wayland brought suit against the board of education to enjoin it from enforcing this rule. The material allegations in his petition were, in substance, similar to the allegations of the bill in this case. An answer was filed by the board of education and a hearing had. The trial court refused the relief prayed, and an appeal was prosecuted to the Supreme Court. That court affirmed the judgment of the trial court, and in an able and exhaustive opinion passed upon every material

question here involved, and we agree with the reasoning of the opinion and the conclusion reached by that court. We quote from the opinion the following: "The board has not excluded the appellant from the Seattle high school, neither has it threatened to expel or suspend him. He can and does attend school, and under our construction of the rules adopted he is at the same time permitted to continue his membership in the Gamma Eta Kappa fraternity, although in doing so he opposes the authority of the board and thereby forfeits certain privileges which are no necessary part of the curriculum or class work, from which he is not excluded. Respondents are only seeking to prevent appellant and his associates from dictating the terms on which they shall enjoy certain privileges which are merely incidental to the regular school work, and this they have authority to do. Appellant further contends that as the fraternities meet out of school hours at the homes of members, and at no time in the school building, and as their parents consent to this action, the board is exceeding its lawful authority in entering their homes, in withdrawing from parents the control of their children, and in dictating what the children shall or shall not do out of school hours. We think this contention unreasonable. The board has not invaded the homes of any pupils nor have they sought to interfere with parental custody and control. They have not said these fraternities shall not meet at the various homes, nor have they attempted to control students out of school hours."

What was there said is applicable to this case. The rule adopted by the board of education, and which is set out in full in the bill, shows upon its face that it was not the result of hasty and ill-considered action. At a previous meeting the board had instructed the superintendent of schools to investigate the effect of secret societies upon the schools, and upon his report that he had made the investigation, and upon his recommendation, the rule was adopted. Assuming, as we must, that the adoption of the rule was not an

abuse of power or discretion conferred by law upon the board, courts cannot, and should not, interfere with its enforcement. Pupils attending the schools may decide for themselves whether they prefer membership in the secret societies, with the disqualification from representing their schools in literary or athletic contests or other public capacities, or whether they prefer these latter privileges to membership in said societies. It is for the board of education, within the reasonable exercise of its power and discretion, to say what is best for the successful management and conduct of the schools, and not for the courts.

In our opinion the bill was properly dismissed, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*