(No. 15023.—Judgment affirmed.)

ROBERT SUTTON, Appellant, *vs.* THE BOARD OF EDUCATION
OF THE CITY OF SPRINGFIELD *et al.* Appellees.

*, Opinion filed February 21, 1923.*

1. SCHOOLS—*legislature may authorize school boards to provide
reasonable rules for management and discipline of schools.* The
legislature may, within its constitutional powers, confer authority
on those having charge of the management and conduct of public
schools to provide reasonable regulations and rules for the schools
and the discipline of the pupils.

2. SAME—*the act of 1919 abolishing secret societies in public
schools is a valid enactment.* The act of 1919 prohibiting fraterni-
ties, sororities and secret societies in the public schools is a reason-
able and valid exercise of the legislative power to promote the best
interests of the schools, as the legislature has the right to deter-
mine that such societies are detrimental to the good order and dis-
cipline of the schools; and the fact that the statute excludes the
State University and Normal schools from its operation does not
render it unjustly discriminatory.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Sangamon county;
the Hon. FRANK W. BURTON, Judge, presiding.

JOHN G. FRIEDMEYER, and A. M. FITZGERALD, for ap-
pellant.

M. U. WOODRUFF, and B. L. CATRON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Robert Sutton, a minor, by his father and next friend,
filed a bill to enjoin the board of education and its officers
of Springfield district No. 186 from enforcing the provi-
sions of an act of the legislature entitled "An act to pro-
hibit fraternities, sororities and secret societies in the public
schools of the State, and to provide for the enforcement of
the same," in force July 1, 1919. The bill alleged the act
is unconstitutional and void. The bill, in substance, alleged
complainant was a student in the public schools of the dis-
trict and was a sophomore in the high school; that he is a

member in good standing of the Alpha Omega fraternity, a Greek letter society nationally organized and existing in many States; that any person presenting himself for membership must have completed the public grade schools and be a member or graduate of a high school; that applications for membership are voted on by secret ballot, and if accepted members are not permitted by the constitution and by-laws to reveal the obligations of the oath administered to them; that the objects of the society are the social betterment of its members, social intercourse between them and other fraternities, a high standard of morality, to encourage obedience to law, and indifference to any religious belief or creed. The bill alleges complainant received a notice February 9, 1922, from the board of education that if he did not sever his relations with said fraternity in the manner stated therein, on or before February 20, he would be suspended or expelled in accordance with the act of 1919. A copy of the notice is set out in full in the bill, and it informed complainant he would be suspended or expelled on the date mentioned unless he withdrew as a member of the society or appeared before the board on that date and showed cause why such action should not be taken. The notice also stated how proof of withdrawal from the society might be made. The bill alleged that fifty-seven other pupils named belonged to similar fraternities, sororities or secret societies. The bill further alleged that the society complainant is a member of does not hold meetings or transact business in the high school but its business is transacted at homes of the members and in nowise interferes with the discipline of the school or the course of study therein. A notice sent by the board of education to the parents of members of such societies was made part of the bill. The bill alleges the schools of the district are organized under the general law, are under the jurisdiction of the board of education, but that the board has no power to control the actions of pupils except when attending school, and that any

attempt to do so is without authority of law. The bill then alleges the act of 1919 tends to discriminate between pupils attending said high school, in violation of section 22 of article 4 of the State constitution, as special legislation and is unconstitutional and void. The prayer is that the board of education be enjoined from interfering with complainant and other pupils similarly situated who join in the bill, in attendance at said school and the classes therein and from suspending or expelling them. The board of education demurred to the bill. The court sustained the demurrer and dismissed the bill. This appeal is prosecuted from that decree.

Appellant makes some contention that the bill tenders issues of fact which should have been answered, and for that reason the court erred in sustaining the demurrer and dismissing the bill. It is apparent from the bill that the case made by it is within the scope of the act of 1919, and if that act is valid the demurrer was properly sustained.

The first section of the act defines a public school fraternity, sorority or secret society as one composed wholly or in part of public school pupils on the basis of the decision of its membership rather than the free choice of any pupil in the school who is qualified by the rules of the school to fill the special aim of the organization. The second section declares any such organization to be inimical to the public good. The third section makes it the duty of boards of education, school directors and other managing authority controlling the public school, to suspend or expel any pupil who shall be or remain a member of such society. The fourth section prescribes a penalty for anyone not a pupil to solicit a pupil to join or pledge himself or herself to become a member. The fifth section exempts the University of Illinois and State Normal schools from the provisions of the act.

The argument against the constitutionality of the act is, that it is made the duty of the General Assembly by the

constitution to provide an efficient system of free schools, whereby all the children of the State may receive a good common school education, while the act of 1919 discriminates between pupils, creates different classes, affects differently the rights and privileges of pupils in the same situation, and subjects certain classes to rules and discipline different from others similarly situated and deprives them of the right to attend the public schools and secure an education. It is conceded boards of school directors and boards of education are given power by the act to establish and maintain a system of free schools, (Hurd's Stat. chap. 122,) to establish rules and regulations for the government and discipline of the schools under their charge, and to suspend or expel any pupil for disobedience and misconduct, but it is argued that the legislature cannot, under the constitution, confer on the board power to adopt and enforce rules which are unreasonable and discriminate between pupils similarly situated, which it is alleged the statute here under consideration does.

It is admitted by the bill appellant is a member of a Greek letter society, composed, in part at least, of high school pupils, which perpetuates itself by taking in high school pupils on the basis of the decision of its members, who vote by secret ballot and are not permitted to reveal the obligation of the oath of membership; that the local chapter of which the appellant is a member holds meetings, transacts business, and the members conduct themselves as an active chapter of the national organization. The question then is presented by the bill whether the legislature had the constitutional power to authorize and direct appellees to suspend or expel a pupil who remained a member of such society after the act of the legislature went into effect.

It is appropriate to notice how appellees proceeded to accomplish that which the statute made it their duty to do, all of which is shown by the bill. In October, 1919, appellees sent a letter to all the patrons of the school informing

them of the passage of the act by the legislature, to which
a copy of the statute was attached, and they were requested
to read it.    A resolution adopted by the board September
23, 1919, also accompanied the letter.    The resolution re-
quired a report to the board of all pupils who remained
members of any public school fraternity, sorority or society
or who joined such society, that they might be suspended
or expelled.    The letter asked the patrons to discuss the
matter with the pupils in their homes, and stated the law
had been presented to and discussed with the pupils; that
they had been told it must be obeyed and their co-operation
was requested.    Afterwards a number of pupils, including
appellant, were reported to the board as remaining members
of a forbidden society, in violation of the law.    Such pupils
and their parents were notified that if the report was true
it was the duty of the board to suspend or expel them, and
they were informed action would be taken by them Febru-
ary 20, 1922, at which time they might appear and show
cause why no action should be taken.    Thereupon the bill
was filed.    A clear case is made of the defiance of the law
and of appellees' authority under it, and the only question
for determination is whether the statute is a valid law.

One of the constitutional provisions relied on by appel-
lant is section 22 of article 4, which provides the legislature
shall not pass local or special laws for the management of
common schools.    Another is the provision above referred
to.    Appellant cites cases where this court has held that no
child otherwise entitled to attend the public schools can be
excluded therefrom on account of color, but those cases
have no application here.    The legislature in its enactment
declared public school fraternities, sororities or secret or-
ganizations to be "inimical to the public good," and directed
that pupils who remained members of such organizations,
or who joined them, should be suspended or expelled.    It
was within the power of appellant, by complying with the
law, to remove the disqualification.    Of course, if the law

was in violation of the constitution he was not bound to obey it, but the legislature may, within its constitutional powers, confer authority on those having charge of the management and conduct of public schools to provide reasonable regulations and rules for the schools and the discipline of the pupils.

Every question raised in this case has been previously adjudicated by the courts of this and other States. In most of the cases decided the question considered was the validity of what may be called anti-fraternity society rules adopted by boards of education. Finally the legislatures of several States adopted laws on the subject, and the validity of such statutes has been passed on in two States, at least, and the laws been sustained. We believe no State has held such statute invalid,—at least we have not had our attention called to any such decision. The powers of boards of education to adopt rules for the control and discipline of public schools was before this court in 1908 in *Wilson* v. *Board of Education,* 233 Ill. 464. In that case we considered a rule adopted by the board of education of the city of Chicago. The rule was intended to suppress Greek letter societies in the public schools. The rule condemned such societies, required the teachers to refuse them recognition, forbade the use of the school name by such societies, and provided that no one known to be a member of such society should be permitted to represent the school in any literary or athletic contest or any public capacity. A bill was filed by four pupils by their next friends to enjoin the board from enforcing the rule. The court sustained the rule and said it was not unreasonable nor an unlawful discrimination. The court referred to *People* v. *Wheaton College,* 40 Ill. 186, where the trustees had adopted a rule forbidding students to become members of secret societies and wherein it was held the rule was clearly within the powers of the college authorities. *Kinzer* v. *Toms,* (Iowa,) 3 L. R. A. (N. S.) 496, referred to in the *Wilson case,* was a case

involving authority of the board to expel a pupil for play-
ing football, in violation of a rule forbidding it, under the
auspices of the school or on the school house grounds.  The
court held the adoption of the rule was a reasonable exer-
cise of the board's power.  The court in the *Wilson case*
also cited *Wayland* v. *Board of School Directors,* 43 Wash.
441, 7 L. R. A. (N. S.) 352, where the court considered a ·
rule similar to the one considered in the *Wilson case.*  In
the *Wayland case* a hearing was had and testimony intro-
duced.  In its opinion the court discussed the subject of fra-
ternities in high schools and their effect upon the pupils and
the school management, and held the rule was within the
lawful powers of the board to enact; that it was a valid
rule and appropriate as a means of preventing the influences
of secret societies in the schools.  The validity of an anti-
fraternity rule of the board of education was again before
this court in *Favorite* v. *Board of Education,* 235 Ill. 314,
and the rule was sustained on the authority of the *Wil-
son case.*

None of the cases we have above cited involved the
validity of a statute.  Since those cases were decided a num-
ber of States have passed statutes similar to the Illinois stat-
ute.  *Bradford* v. *Board of Education,* 18 Cal. App. 19, in-
volved the right of a board of education to expel a pupil
from a high school on account of membership in a Greek
letter society under a statute similar to ours.  The consti-
tutionality of the statute was challenged, and it was claimed
to also violate the fourteenth amendment of the Federal
constitution.  Normal schools were exempted from the op-
eration of the statute, the same as they and the Illinois
University are in our statute.  The court said young and
immature pupils of the public schools might quite properly
form a class and be made the subjects of legislation; that
those who attended Normal schools and colleges, being
older and of wider experience, were better fortified to with-
stand possible hurtful influence attendant upon membership

306—33

in secret societies than young pupils attending the public schools. The court said: "We have no doubt that there is a sufficient difference between these last mentioned schools and the Normal to constitute a proper basis for classification, and that the statute applies equally to all of the particular class mentioned." On the question whether the statute violated the Federal constitution, the court said the system of public schools was a State institution, subject to the control of the constitutional authorities of the State.

In Mississippi a statute was enacted by the legislature in 1912 to abolish and prohibit Greek letter fraternities and societies and all secret orders among students in the University of Mississippi and in all other educational institutions supported in whole or in part by the State. Section 2 provides that no student in the university, or in any other educational institution supported in whole or in part by the State, who is a member of any of the orders, chapters, fraternities, sororities, societies and organizations prohibited, shall be permitted to receive any class honors, diplomas or distinctions conferred by the institution nor to compete for any prize offered by any association or individual. It was further provided that any student who was a member of any such society upon entrance to any of said schools, might file with the chancellor, president or superintendent an agreement that he would not during his attendance at school affiliate with or attend meetings of such societies, and that as long as he complied with the agreement in good faith he should not be subjected to the restrictions created by the statute. Section 3 makes it the duty of the school authorities to enforce the statute by such rules and punishments as they may prescribe. In order to carry out the duties which the act of the legislature imposed on the trustees they enacted a rule that a student applying for admission to the university should be required to sign a statement affirming upon his honor that he was not then pledged to become a member of any such society, that he had not become a mem-

ber within sixty days preceding the beginning of the school
session, and pledging that he would not join any such or-
ganization while a student nor encourage the organization
of any such societies, and other pledges of a similar kind.
W. P. Waugh applied for admission to the university, but
on his refusal to sign the pledge required by the trustees
he was denied admission to the school.   Thereupon he filed
a bill to enjoin the trustees from enforcing the rule and to
require them to refrain from demanding that he sign the
pledge, which was incorporated in the application for ad-
mission as a student to the university.   The bill alleged the
act of the legislature was unconstitutional, as being in con-
flict with the constitutions of the United States and of the
State of Mississippi, and that the rule of the trustees was
unreasonable and *ultra vires.*   The case was reviewed by the
Supreme Court in *University of Mississippi* v. *Waugh,* 105
Miss. 623, L. R. A. 1915D, 588.   The court sustained the
statute and the rule of the trustees adopted for its enforce-
ment, and said, in substance, that the educational institu-
tions to which the act applied were under the control of
the legislature, and when it passed a law disciplinary in its
nature, regulating any subject it considered inimical to the
welfare of the school, it was not within the power of a
court to declare the act unenforcible because the court might
think it unwise or unnecessary.   The court said: "Both the
institutions and the trustees are under the absolute control
of the legislature.   The legislature has the undoubted power
to pass a law prohibiting Greek letter fraternities from be-
ing organized or carried on at any educational institution
in the State.   The legislature has the right to say that any
student desiring to enter any educational institution of the
State shall renounce his allegiance to any Greek letter fra-
ternity while he is a student in the State institution.   The
law requires the trustees of the educational institutions of
the State to see that this act is enforced, and in order to
do this they have a right to exact of any student who de-

sires to enter, as a condition precedent to his entry, that he will promise to obey the statute law of the State,—and this is all that the trustees have required. If complainant desires to enter the university, all he has to do is to promise obedience to the law of the State and the doors of the university will be open to him." The court held the act violated no provision of either the Federal or State constitution. An appeal was prosecuted from the State court's decision to the Supreme Court of the United States, (*Waugh* v. *Board of Trustees,* 237 U. S. 589,) where the judgment was affirmed, and the Supreme Court of the United States said, among other things: "It is said the fraternity to which complainant belongs is a moral, and of itself a disciplinary, force. This need not be denied. But whether such membership makes against discipline was for the State of Mississippi to determine. It is to be remembered that the university was established by the State and is under the control of the State, and the enactment of the statute may have been induced by the opinion that membership in the prohibited societies divided the attention of the students and distracted from that singleness of purpose which the State desired to exist in its public educational institutions. It is not for us to entertain conjectures in opposition to the views of the State and annul its regulations upon disputable considerations of their wisdom or necessity. Nor can we accommodate the regulations to the assertion of a special purpose by the applying student, varying, perhaps, with each one and dependent alone upon his promise. This being our view of the power of the legislature, we do not enter upon a consideration of the elements of complainant's contention. It is very trite to say that the right to pursue happiness and exercise rights and liberty are subject in some degree to the limitations of the law, and the condition upon which the State of Mississippi offers the complainant free instruction in its university, that while a student there he renounce affiliation with a society which the State considers inimical

to discipline, finds no prohibition in the fourteenth amendment."

Our attention is called by appellant to the decision in *Wright* v. *Board of Education of St. Louis,* (not yet reported,) where it was held an anti-fraternity rule almost precisely like the rule considered by this court in *Wilson* v. *Board of Education, supra,* was invalid and could not be enforced. In its opinion the Supreme Court referred to the *Wilson case* and other cases, and said the powers of boards of education under the statute of Missouri were more limited than they were in some other States, and the court refused to follow decisions of other States on that question.

Appellant was given his choice between suspension or expulsion, and severing his connection with the Greek letter society while a pupil in the public school. If he had complied with the requirements of the law and the rule of the board his continued attendance at the public school would not have been interfered with. The statute does not purport to control pupils in their homes or in social activities under the supervision of their parents, but declares that the secret societies and organizations defined therein are inimical to the public good, and for that reason they are forbidden. The legislature considered such societies detrimental to the good order and best interests of the school, and we cannot say the statute is not a reasonable enactment and a valid exercise of legislative powers for the promotion of the best interests of the schools and the discipline and good order therein.

We do not regard it as necessary to indulge in further comment, in view of previous decisions in this and other States, from some of which we have quoted in part. In the cases cited will be found full discussions of all the questions raised in this case.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DUNCAN, dissenting.