Jack LIVINGSTON, a minor, by Tennyson D. Livingston, his father and next friend, and Tim Hellberg, a minor by Harry Hellberg, his father and next friend, Plaintiffs,

v.

Harley SWANQUIST, Miles Lutter, Lyle Hughard, Jay Gossett, Jack Brobst, Gerald Dauwalder, Raymond Lubbs, each individually and as member of the Board of Education for School District 308, Douglas Moews, individually and as Principal of the Oswego Community High School, and the Board of Education for the School District 308, Defendants.

No. 69 C 2677.

United States District Court,
N. D. Illinois, E. D.

June 9, 1970.

Patrick J. Dixon, Murphy, Griffin & Dixon, Aurora, Ill., for plaintiffs.

L. M. Ochsenschlager, Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PERRY, District Judge.

This case involves the right of school authorities to adopt and enforce the terms of a dress code for high school students and to bar male students with long hair from school attendance. It also presents the question as to whether by such action the school authorities violate the Constitutional rights of students. The subject is a timely one.

In the case at bar the high school had a dress code with which two teenage male students refused to conform and continued to wear their hair over the ears and shoulder length. The two students sought readmission to classes. The school authorities refused them admittance until they wore their hair in compliance with the hair grooming provision of the school's dress code. The students, both minors, thereupon brought this action, each by his father and next friend, pursuant to the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution, charging violation of their rights thereunder, and seeking equitable and declaratory relief and damages. Jurisdiction is asserted under 28 U.S.C. Sections 1343, 2201 and 2202 and 42 U.S.C. § 1983 as amended.

Plaintiffs Jack Livingston and Tim Hellberg are each 16 years of age. Both minor plaintiffs and their parents are citizens of the United States and the State of Illinois. The parents of both plaintiffs are residents of and taxpayers in School District 308 in Kendall County, Illinois. On and prior to November 10, 1969 Jack Livingston and Tim Hellberg were each residing with their respective parents and were enrolled as students at Oswego Community High School in School District 308.

Plaintiffs named as defendants herein the Board of Education for School District 308 (hereinafter sometimes referred to as the "School Board"), members of the School Board, and Douglas Moews, the Principal of Oswego Community High School. All the defendants entered their appearances and filed answers herein.

On May 15, 1970 the court heard the evidence of all the parties and the argument of counsel. Each counsel was directed to supply the court with pertinent citations of authorities and the court then took the case under advisement for the purpose of preparing a memorandum opinion and final order in this cause. The court has jurisdiction of the parties hereto and the subject matter hereof and is this day entering this Memorandum Opinion and Order, which memorandum opinion and order shall stand as the court's findings of fact and conclusions of law herein.

Under Illinois law children are required to attend school until they reach the age of 16 years and if a child is over 16 and is enrolled in any grade through the fourth year of high school, he or she must attend school during the regular school term unless he is excused. School boards in the State of Illinois have their duties enumerated and these include the adoption and enforcement of all necessary rules for the management and government of public schools in their district, including the discipline of pupils and the power to suspend or expel students guilty of gross disobedience or misconduct. Ill.Rev.Stat. Chap. 122, Sections 26–1 and 26–2; 10–20.1 through 20.5; 24–24; 10–22.6(a).

Said Section 24–24 reads, in part, as follows:

"Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and school children, they stand in relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils

in the absence of their parents or guardians.

"Nothing in this Section affects the power of the board to establish rules with respect to discipline."

Prior to the opening of the Fall 1969 term at Oswego Community High School, the school had not had a dress code with rules regulating the type and manner of students' attire and appearance. The School Board, teachers, students and the community had felt no need for such a code as there had been no serious problems and certainly no disciplinary problems regarding the dress and appearance of students. Variations from accepted standards of dress and conduct which had developed before that time had been solved by a process of persuasion.

However, beginning in the Fall of 1969 the influence of the student protest movement throughout the country, with its portrayal on television and reports in the news media, began to be felt and there arose in the community a demand for the adoption of a dress code for the junior and senior high schools.

Responding to the demands of parents, teachers and students, the School Board directed Douglas Moews, the Principal at Oswego Community High School, to appoint a committee to make a study, survey public opinion, and finally to make recommendations concerning a dress code for the schools. Named to the committee were two students from the junior high school, two students from the senior high school, two parents of junior high students, two parents of senior high students, two junior high school teachers, two senior high teachers and the administrators of the junior and senior high schools. Members had varying viewpoints and one male student favored the wearing of long hair by male students. The names of the committee members were publicly announced and plaintiffs herein made no objection to the committee as appointed. In fact no objection was made to the membership by any person. The committee held meetings and there was wide community participation in its decisions.

Copies of the proposed dress code were distributed to School Board members at their regular meeting on October 13, 1969, and after lengthy discussion, involving many opinions expressed from guests at the meeting, the Board decided to hold the code for further study and to wait and announce the code in its final form at its next meeting. The dress code again was on the agenda of a special session of the Board on November 3rd and the Board decided the dress code was essential. It concluded certain standards of dress and good grooming promote a wholesome academic atmosphere and would reflect in the well-being of the community. It also was the Board's opinion that the vast majority of students wish to create a favorable impression of themselves and their schools. The Board also determined that since there is so much similarity in the dress of male and female students who wear slacks and sweaters, there should be some way by which teachers could easily distinguish the boys from the girls and thus avoid difficulties which could arise if some unruly, or ill-mannered, or malicious-minded boy entered a girl's washroom or vice versa. The Board decided that an effective method would be to prohibit boys from adopting girl's hair styles and that the most practical procedure would be to require the boys to have their hair cut so as to expose their ears and no longer than the top of their collars. The Board also determined that the wearing of a girl-style hair-do by boys was in fact a disruptive influence and interfered with order in the classroom.

At its November 3rd session, the Board adopted a dress code, including the following requirement, pertinent herein:

"Cleanliness and good grooming should be the rule for boys' hair styles. Hair must be tapered in back and on the sides or, if worn long, must not hang over the top of the collars and must be groomed so that it will not cover any part of the ears. Length of the hair on the forehead is limited to eyebrow

level. Sideburns, neat and trimmed, may not extend below the ear lobe. All boys will be clean-shaven."

Copies of the code were made available in the school's home rooms where it was read and discussed. On November 6, 1969 the school held a general convocation for all students and Jack Livingston and Tim Hellberg were present. The dress code was read, explained and fully discussed. The students, including minor plaintiffs herein, were then and there informed that the dress code would become effective; that after November 10, 1969 the code would be enforced and, further, that any student who failed to dress or groom himself or herself according to the code would not be permitted to remain in school from and after November 10, 1969.

Oswego Community High School had approximately 300 male students enrolled in its 1969 Fall term. Came November 10th and 33 of the 300 boys in the school appeared with their hair covering their ears and falling below their collars and otherwise not in compliance with the hair grooming provision of the code. Jack Livingston and Tim Hellberg were among the 33. The Principal promptly sent all 33 students home with directions to see their barbers before returning. Most of the boys returned to school on the same day with their hair dressed in conformity with the regulation. All of the 33 boys had returned by the next day in compliance with the hair grooming provision except Jack Livingston and Tim Hellberg. All these 31 students were immediately admitted to classes. Since that time there has been no further dress or grooming problem at the school except that concerning minor plaintiffs.

Both Jack Livingston and Tim Hellberg left the school on November 10, 1969 after being informed they could not attend classes until they complied with the regulation concerning style and length of hair. Thereafter school authorities urged the two students to comply with the dress code and return to school but they refused to return unless they could do so without complying with the hair-grooming rule. It also appears that the parents of both these minors requested their children to comply and return to school but both minors refused to do this and their parents acceded to their decision. On several occasions both Jack Livingston and Tim Hellberg returned to school without complying with the regulation and requested admission. This was denied them.

Minor plaintiffs were before this court on January 2, 1970 for a preliminary hearing and again at the trial on May 15, 1970, as hereinafter more fully set forth, and the court observed that on both occasions they were wearing their hair shoulder length, over their collars, covering their ears, in a style similar to a girl's hair-do, and in violation of the hair grooming provision of the school's dress code. Pictures of Jack Livingston and Tim Hellberg, taken at their depositions on February 27, 1970, are in evidence and show them wearing their hair long and otherwise in violation of the hair grooming provision of the code.

Jack Livingston and Tim Hellberg have never claimed they have been in compliance with the hair grooming provision or that they did not have notice of the enactment of the dress code by the School Board. Minor plaintiffs did appear at a regular meeting of the Oswego School Board on December 8, 1969, at which the dress code was being reconsidered, and their attorney inquired as to the exact status of minor plaintiffs and if the Board was going to enforce the code. The attorney wrote a letter to the School Board on December 15, 1969, which asked the Board to rescind the code and readmit minor plaintiffs to school. Neither on December 8 or December 15 did Jack Livingston and Tim Hellberg claim they were in compliance with the hair grooming regulation, nor did they offer to comply before the Board on December 8, or in the letter of December 15 aforesaid.

Minor plaintiffs simply refused to comply, wanted the code repealed, and demanded that school authorities readmit

them in spite of the fact they were admittedly in violation and defiance of the hair grooming provision. They, in effect, asked for unequal protection of the law for themselves, that a special exception be made for them, and that the code apply to all others but not to them. This exception the School Board and school authorities properly refused to grant.

These two minors had full knowledge of the school's dress code. They were advised on November 10th and at other times of the reason for not being admitted to school. They defied the hair grooming provision and continue to defy it on the grounds that they want to wear their hair long as an expression of their "freedom" and as each of them testified, "I like it that way." They maintain they have a constitutional right to be dressed and groomed as they see fit. Neither of minor plaintiffs claims he has any political, racial or religious belief involved in wearing hair long, or that there is any sanitary reason therefor. With each of minor plaintiffs it is merely a matter of personal choice.

Although parents of both boys oppose the long hair style affected by their sons, they apparently find it easier to acquiesce rather than discipline them in this matter. The parents thus pass on their responsibility to the school and community as too many parents are doing in this permissive age, and the parents thereby contribute to the lack of discipline and lawlessness among the youth of our country.

Jack Livingston and Tim Hellberg remained away from school and on December 31, 1969 filed this action asking this court to declare the dress code null and void and inapplicable to minor plaintiffs, to declare the school's action in barring plaintiffs from school as illegal and unconstitutional, to enjoin defendants from suspending, expelling or denying minor plaintiffs admittance to school because of their hair style and to grant plaintiffs actual damages, exemplary damages and their costs of action.

On January 2, 1969 minor plaintiffs appeared in this court seeking a preliminary injunction to restrain the School Board and school authorities from enforcing the code. At the trial in May the two students claimed that class time would be lost by them for the reason that they felt it necessary to keep working on their hair during class with their hands to make certain it would remain pinned up in rolls. However, at the January 2nd hearing, counsel for plaintiffs and defendants reached an agreement whereby minor plaintiffs would be readmitted to school pending a final hearing of this cause if they would either pin up or tie back their hair in such manner as their ears would show and so as to not exceed the limitations as to length and placement set forth in the dress code. While it was not so stated by the defendants, the court concludes from the evidence at the trial that the reason the defendants were willing to enter into such a temporary agreement was because it made it possible to easily distinguish the fact minor plaintiffs were males and not females. The agreement was carried out and minor plaintiffs were readmitted to school. However, they have not been in regular attendance because of their own truancy. By its entry into this agreement the School Board demonstrated clearly that the Board has never acted arbitrarily or capriciously but has at all times wanted plaintiffs to attend school and that the Board and school authorities were willing to go more than half way to make it possible for these two teenagers to remain in school.

Now let us examine the conduct of Jack Livingston and Tim Hellberg since their return to school. Although they returned to school on January 5, 1970, they by their own testimony have been either truant or absent at least one day a week. Jack Livingston testified that he had forged his father's signature to excuses stating that he was home ill when, as he admitted, he and Tim Hellberg went to downtown Aurora, a distance of four or five miles. They went the distance on foot. Tim Hellberg presented an illness excuse signed by one of his parents when he returned to school the

next day, namely April 17, 1970, which was false in view of the undisputed evidence that he walked to Aurora that same morning. In the court's opinion plaintiffs' parents again show lack of courage and parental duty in collaborating or condoning such conduct on the part of their minor children.

From all of the evidence and its observation of minor plaintiffs' attitudes, the court finds and concludes Jack Livingston and Tim Hellberg are not interested in attending school. Once readmitted under the agreement, they were truant. They do not want to go to school. They are two very bright boys who are selfish and totally undisciplined. The right they really want to assert is not constitutional but a kind of anarchy, the placing of their individual desires over and above parental authority and the law. These two teenagers would abolish all restraints and all discipline. That is what this suit is all about. If their parents, who are taxpayers, had any belief that their children were being deprived of any rights, or were being discriminated against, or were not receiving equal protection of the laws of the State of Illinois or the United States Constitution, the parents would have participated in and testified at the trial. Their failure to testify speaks louder than volumes of legal rhetoric.

Defendants produced four experts, each with many years of experience in teaching and in administrative capacities in education. One had a Doctor's Degree and was in charge of the Educational Department of Aurora College; another had many years of experience as a school administrator. All of these experts testified that, from their professional and educational experience and training, they were of the opinion that there is a direct correlation between dress and grooming and good behavior, discipline and a teaching climate in the classroom. None of this testimony was refuted, nor was any attempt made to refute the opinions of these experts.

This court finds that the School Board was not arbitrary or capricious but was justified in adopting a school dress code for Oswego Community High School. There was reasonable necessity for the code in the administration of an orderly school program at the school. In this court's opinion defendants have established that violations of the school's dress code can be disruptive and can adversely affect discipline and decorum in the classroom. Defendants have shown a school dress code is an aid in maintaining good order in the school and a proper teaching climate.

School officials are best able to determine what rules are reasonable and necessary—not the Federal courts. It is high time the Federal courts cease interfering with the management and enforcement of discipline in the schools and return conduct and control back to school authorities. School boards and authorities have traditionally had such control until the past few years when over-zealous civil rights organizations and others have brought a growing number of complaints in the Federal courts. Not only have the schools been controlled by teachers and school boards but it has been and is their constitutional function under the Tenth Amendment which reserves such control to the States as part of the police power.

This is one of those cases, involving social and economic affairs of a State, which is not a case for intervention by the Federal court. As the Supreme Court of the United States on April 6, 1970, said, in the case of Dandridge, et al. v. Williams, et al., 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, 1969,

"* * * It is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of wise economic or social policy."

It is unnecessary for the court to say more than that the Tenth Amendment to the Constitution reserves the questions here involved to the States, among which

is the State of Illinois. However, since this case was fully tried and the parties have cited various decisions in the United States District Courts and Courts of Appeal, this court feels further comment is in order.

Plaintiffs claim the dress code restricting length and style of plaintiffs' hair is invalid, in excess of the authority conferred upon defendants, is unreasonable and not calculated to promote the objects of the Illinois Constitution and School Code. Illinois Revised Statutes, supra, impose a duty on School Boards not only to adopt but to enforce necessary rules for management and government of schools in their district, including rules to encourage discipline and promote a favorable classroom climate. These duties and powers have been affirmed in Wilson v. Board of Education, 233 Ill. 464, 84 N.E. 697; Sutton v. Board of Education, 306 Ill. 507, 138 N.E. 131, and Segar v. Board of Education, 317 Ill. 418, 148 N.E. 289. The leading case in Illinois on the duty of school boards is the *Wilson* case in which the Illinois Supreme Court stated, 233 Ill. page 470, 84 N.E. page 698:

" * * * The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules and by-laws necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts unless there is a clear abuse of the power and discretion conferred. Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order and discipline of the schools and the rules required to produce these conditions."

The United States Supreme Court has repeatedly reminded the lower courts that they should not interfere in the daily operation of the schools. In Tinker v. Des Moines, etc., School District, 393 U.S. 503, at 507, 89 S.Ct. 733, at 737, 21 L.Ed.2d 731 (1969), the Supreme Court said:

" * * * the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."

And in Epperson v. Arkansas, 393 U.S. 97, at 104, 89 S.Ct. 266, at 270, 21 L.Ed. 2d 228 (1968), the Court earlier had reminded:

" * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."

To like effect in rejecting challenges to various school regulations are Davis v. Firment, 269 F.Supp. 524 (1967); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed. 2d 125; Leonard v. School Committee of Attleboro, Mass., 349 Mass. 704, 212 N.E. 2d 468 (1965); Crossen v. Fatsi, D.C., 309 F.Supp. 114 (1970); Brownlee v. Bradley Cty. Board, D.C., 311 F.Supp. 1360, decided April 10, 1970. The court has also read and considered the case of Jackson, et al. v. Dorrier, et al., 424 F.2d 213, decided April 6, 1970, in the Court of Appeals for the Sixth Circuit, which decision supports defendants position herein.

Although minor plaintiffs claim that their rights to due process and equal protection have been violated, they did not pursue their due process claim on the trial or present evidence thereof. Minor plaintiffs had full and complete notice of the adoption of the code. They were advised at the November 10th convocation, at the December 3, 1969 School Board meeting, and at other times of the rea-

son for not being admitted to school. Yet they continued to simply dispute with, and to defy the power of, the School Board and school authorities. As to procedural due process, the court noted the plaintiffs did not pursue their State remedy before filing this action. There simply is no lack of due process shown except by the legal conclusion in the Complaint.

Minor plaintiffs theorize that since they have an admitted right and statutory duty to attend school at their age, the action of the School Board in adopting a dress code contrary to their approval, and their exclusion from school because of non-compliance with it, deprives them of a constitutional right by creating an invidious classification which results in unequal protection of the laws. This is just so much legal jargon.

■ Regulations of the states must, of course, not violate the protection afforded under the Federal Constitution. Rules of a dress code, such as the one in question here, are required to be fair and reasonable, specific enough to be understood, and justified. The Oswego Community High School dress code and its hair grooming provision meets all these standards. The code was not arbitrary in defining a class to which it applied. The code was not discriminatory; it was applied equally to all students. There is no claim or showing that it was not equally enforced. Exactly the contrary was shown. Thirty-one of the 33 students not in compliance with the code conformed to the hair grooming provision and were readmitted to school. Defendants offered and still offer to readmit minor plaintiffs under the same conditions. Minor plaintiffs figuratively have the keys to the school rooms in their pockets and may open the doors to them at will. In fact there are no locks that bar their entrance. The bar is all in their own strong-willed and undisciplined minds.

■ As to Jack Livingston's and Tim Hellberg's claims that enforcement of the regulations deprived them of freedom of speech and expression under the First Amendment, this court concludes from their own testimony and otherwise that they did not wear their hair long for political, social or religious reasons, or as symbols of a movement or as a way of expressing themselves as to come within the concept of free speech in the First Amendment. Theirs was a personal choice as to hair dress. It was not an expression of freedom of speech as in the *Tinker* case, supra, where the school pupils wore black armbands to protest the Government's policy in Vietnam. The parallel in the instant case is with the *Ferrell* case. As in the *Ferrell* case, minor plaintiffs herein appear to be making a studied effort to draw attention to themselves, which is disruptive in the classroom. They want an education on their own terms. As the court said in *Ferrell*, " * * * this court is concerned for the welfare of individual plaintiffs in this case, but feels the rights of other students, and the interest of the teachers, administrators and the community at large are paramount."

As the Board of Education of Oswego Community High School said in the introduction to the dress code for the Junior and Senior High Schools,

"Students actions, attitudes and attire convey an impression to the adult sector that maintains and supports public school program. It is the opinion of the Board of Education and the administration that the *vast majority* of Junior and Senior High School students wish to create a favorable impression of themselves and the schools they represent. In order to assist the students, the following code will be in effect for the 1969-70 school year, and compliance shall be required: * * *." (Emphasis supplied)

The School Board had compelling reasons for adopting and enforcing the dress code and by suspending students who wear long hair simply because they "like it that way" the Board did not violate their rights under the United States Constitution and the laws of the State of Illinois.

Since plaintiffs have sought to rely on certain cases in this District Court and affirmances by the Court of Appeals for the Seventh Circuit, it is appropriate to distinguish the cases here. Defendants cite Breen v. Kahl, 296 F.Supp. 702 (1969), affirmed by the Court of Appeals for the Seventh Circuit, 419 F.2d 1034. Certiorari was recently denied and it is understandable the Supreme Court did not see fit to grant certiorari when the trial court below found as a matter of fact that defendants therein failed to sustain the burden of justification for adoption of the regulation in that code. This lack of justification was pointed out in the decision of the Circuit Court of Appeals in *Breen* when that court distinguished the *Breen* case from Ferrell v. Dallas Independent School District, 392 F.2d 697. In the latter case the defendant school board made a showing of justification for its code, just as defendants did here in the case at bar. This court also notes that in the *Breen* case, plaintiffs therein first pursued a State remedy. Jack Livingston and Tim Hellberg, plaintiffs herein, have not done so.

Plaintiffs also cite the case of Miller v. Gillis, et al., D.C., 315 F.Supp. 94, decided by the Honorable James B. Parsons of this District Court. A careful reading of that case reveals that Judge Parsons was concerned with the equal protection clause of the Fourteenth Amendment as it applied to students at Barrington Consolidated High School, where plaintiff therein was a student. The record showed that several male teachers at the school were in violation of the school's dress regulations and that the Barrington dress code required different treatment of the student from his teacher, which was clearly unreasonable and violated the equal protection clause.

Statutes and school board dress codes have certain unwritten but implied provisions just as State officials and school boards have certain unwritten powers and authority. For example, who can dispute the power of a school board and school authorities to deny admittance to nude students or girls wearing topless dresses or boys wearing unbuttoned shirts and no trousers? Suppose the School Board and school authorities had denied admittance to a 15-year-old boy who is required by law to attend school but who appeared nude. Under these circumstances would the court have jurisdiction to compel the School Board and authorities to admit the student without first compelling the student to clothe himself? Or would the correct remedy be to compel the student to first dress and then seek admittance? On the other hand who could believe that a school board and authorities would have the power to enforce a regulation requiring girl's skirts to reach the ankles or boys' jackets to fit closely around the throat? The answer is simple and sensible. School boards have the power to adopt and enforce reasonable dress regulations that meet the needs of the schools and conform to social custom. This is just what the Oswego School Board and authorities did.

In this court's opinion, this court and no other court has jurisdiction or power to interfere with such action of the Board and school authorities since the action was not overreaching and did not violate minor plaintiffs' constitutional rights. The court considers the *Dandridge* case, supra, a landmark case in its admonition to the Federal courts not to impose upon the States their views of wise economic and social policy. This court heeds that admonition.

For the reasons herein set forth, the court finds the issues of fact and law herein for defendants and denies plaintiffs the relief herein requested. It is ordered, adjudged and decreed that this cause be and the same is hereby dismissed.